705 So.2d 1149 (1997)
Verna M. PITRE, David Wayne Pitre, Sharon Marie Pitre, Joan Pitre Wilbanks and Mona Lynn Pitre Nelson
v.
GAF CORPORATION, et al.
No. 97 CW 1024.
Court of Appeal of Louisiana, First Circuit.
December 29, 1997.
Rehearing Denied February 18, 1998.
George R. Covert, Baton Rouge, and James L. Piker and Sean D. Fagan, Baton Rouge, for Plaintiffs/Relators Verna M. Pitre, David Wayne Pitre, Sharon Marie Pitre, Joan Pitre Wilbanks and Mona Lynn Pitre Nelson.
Charles L. Chassaignac and Carmelite M. Bertaut, New Orleans, and Henry D. Salassi, Jr., Baton Rouge, for Defendants/Respondents R.J. Reynolds Tobacco Company and Brown & Williamson Tobacco Corporation.
Sally A. Shushan, New Orleans, for Defendant/Respondent The American Tobacco Company.
Steven W. Copley, New Orleans, for Defendant/Respondent Lorillard, Inc.
Charles F. Gay, Jr., New Orleans, for Defendant/Respondent Philip Morris, Inc.
*1150 John J. Weigel and Joseph J. Lowenthal, Jr., New Orleans, for Defendant/Respondent Liggett & Myers Tobacco Co., Inc., now known as Liggett Group, Inc.
John R. Santa Cruz, New Orleans, and John Cosmich, Jackson, MS, for Defendant Owens-Illinois, Inc.
Susan B. Kohn, New Orleans, for Defendant McCarty Corp.
Michael T. Cali and John J. Hainkel, III, New Orleans, for Defendant Owens-Corning Fiberglas Corp.
Evans Scobee, Baton Rouge, for Defendants Winn-Dixie Louisiana, Inc. and K & B Louisiana Corporation.
Thomas G. Milazzo, New Orleans, for Defendant Asbestos Corporation Limited.
John T. Culotta, Metairie, for Defendant Flintkote Co.
Maria I. O'Byrne Stephenson, Lisa Matthews, New Orleans, for Defendant Rock Wool Manufacturing Company.
Before FOIL, WHIPPLE and KUHN, JJ.
KUHN, Judge.
In this products liability action brought against cigarette manufacturers and sellers, plaintiffs have appealed a judgment by the trial court, which granted defendant's motion for partial summary judgment, and ordered that all claims in this suit are to be governed by the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 et seq. Because the judgment appealed was an interlocutory ruling, this court converted the appeal to a writ application. We review this matter pursuant to a writ of certiorari.[1] The issue before the court is whether this case is to be governed by the LPLA, which became effective on September 1, 1988, or Louisiana tort law which was in effect before that date. We vacate the trial court's judgment and remand this matter for further proceedings.

I. FACTS AND PROCEDURAL BACKGROUND
Plaintiffs, Verna M. Pitre, the surviving spouse of Calvin J. Pitre; and David Wayne Pitre, Sharon Marie Pitre, Joan Pitre Wilbanks and Mona Lynn Pitre Nelson, all children of Mr. Pitre; filed suit against R.J. Reynolds Tobacco Company, Phillip Morris, Inc., American Tobacco Co., Lorillard, Inc., Brown & Williamson Tobacco Corporation and Liggett & Myers Tobacco Co., Inc. (collectively referred to as "the cigarette defendants").[2] Several other companies, including those alleged to have sold cigarettes to Mr. Pitre and those alleged to have manufactured asbestos or to have supplied and installed asbestos in places where Mr. Pitre worked between 1949 and 1975, were also named as defendants.[3]
Plaintiffs allege that Mr. Pitre smoked cigarettes manufactured by the cigarette defendants from 1940 until 1992, and that as a result of the inhalation of asbestos particles and tobacco smoking, he developed lung cancer caused by his exposure to the asbestos and tobacco smoke. Plaintiffs also assert Mr. Pitre was diagnosed as having lung cancer during September of 1991, and that this condition resulted in his death on June 1, 1992.
Plaintiffs advance their products liability claim by alleging, in pertinent part:
[The cigarette defendants] at all times pertinent hereto, designed, manufactured, sold and distributed tobacco products which were unreasonably dangerous per se, ultrahazardous, and unreasonably dangerous in containing design defects. In addition, through fraudulent misrepresentation and suppression of the truth, [the cigarette defendants] caused the late [Mr. Pitre] to start and to continue to smoke and entered into a conspiracy organized to refute, undermine and neutralize information *1151 coming from the scientific and medical community.
Additional allegations regarding fraud have also been asserted by plaintiffs.
The cigarette defendants answered plaintiff's petition, generally denying the allegations and specifically denying that any cigarettes manufactured and/or sold by them caused or contributed to the alleged diseases of Mr. Pitre. The cigarette defendants also asserted that 1) plaintiffs' claims are barred by the LPLA; 2) the decedent assumed the risk, if any, incident to smoking cigarettes; and 3) any injury allegedly sustained by decedent was caused by his own fault or the fault of third parties.
Subsequently, the cigarette defendants filed a motion for partial summary judgment, asserting plaintiffs' damages occurred (and, as such, plaintiffs' claims accrued) after the effective date of the LPLA. Therefore, defendants contend many of the theories of liability advanced by plaintiffs are barred by the LPLA. Defendants' position is that the LPLA establishes the exclusive theories of liability for manufacturers for damages caused by their products and that a claimant may not recover from a manufacturer for damages caused by a product on the basis of any theory of liability except: 1) construction or composition defect; 2) design defect; 3) warning defect; and 4) failure to conform to an express warranty. La. R.S. 9:2800.52-59.
Plaintiffs contend that the applicable law is that which was in effect when Mr. Pitre was significantly exposed to tobacco products. Relying on Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), plaintiffs urge the "exposure rule" is applicable in tort cases involving long-latency diseases. Since Mr. Pitre smoked for forty-eight years prior to the effective date of the LPLA and the type of cancer allegedly caused by the defendants' cigarettes is a long-latency type of disease, plaintiffs assert pre-LPLA tort law is applicable to this case. Thus, plaintiffs urge that all theories of recovery urged by them are viable, including the "unreasonably dangerous per se" theory. Halphen v. Johns-Manville Sales Corporation, 484 So.2d 110, 114 15 (La.1986). Plaintiffs further contend the conduct of the manufacture and sale of cigarettes is an ultrahazardous type of activity. They assert this type of activity is not governed by the LPLA and that liability for such activity should be assessed without fault.
The district court granted the defendants' motion, ruling that "all claims in this suit will be governed by the [LPLA]." In written reasons for judgment, the court stated the following, in pertinent part:
The sole issue first presented to this court was to determine if the [LPLA] is applicable to this case.... There is no question that the [LPLA] is prospective only.
When a cause of action accrues, its temporal location determines what law is to be applied. One element necessary for a cause of action to "accrue" is the sustaining of injury. In cases where damage results from a slow, continuous process rather than a single, identifiable act, pinpointing the "sustaining of injury" is virtually impossible.... The United States Court of Appeal for the Fifth Circuit in Brown v. R.J. Reynolds Tobacco Company [52 F.3d 524] concluded that the law in effect at the time of manifestation of a disease, rather than the law in effect during earlier times of exposure, should be the law applied....
The case of Cole v. Celotex Corporation (599 So.2d 1058) advanced the "exposure theory," but this was done in the confines of the Louisiana Comparative Negligence Act....
It does appear that the Brown court was somewhat reluctant in applying the manifestation, or accrual test. Two later unpublished U.S. Fifth Circuit cases, Calvin W. Gibson v. Philip Morris Incorporated and Louis Marks v. R.J. Reynolds Tobacco Company, track the Brown case, but the two cases use identical language in reaching their conclusions: "As there has been no intervening law contradicting Brown, this panel may not overrule it, and (plaintiff's) assertion of the exposure theory must be rejected." This language is not that of enthusiastic reaffirmation.

*1152 The Brown case does not completely close the door to a claimant with latent injuries ever prevailing on this issue. When and if recognized experts provide competent evidence that exposure to tobacco smoke or some other substance caused a disease to manifest, and this temporal placement of causation is before the enactment of the [LPLA], and it is deemed to be within "a reasonable degree of medical certainty," then prior legislation and its jurisprudence will be applicable.
The testimony of Dr. Richard W. Kearley falls short of the evidence required to convince this court that Mr. Pitre's cause "accrued" prior to the enactment of the [LPLA].
The court rejected defendants' request that the judgment granting the motion for summary judgment would read, "... partial summary judgment is granted, and all claims except for design defect are dismissed with prejudice." The court stated that the defendants were asking the court to editorialize on its own findings. Instead, the judgment provides "... the Defendants' Motion for Partial Summary Judgment is granted, and all claims in this suit will be governed by the [LPLA]."[4]

II. ANALYSIS

A. Summary Judgment
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993); Madden v. Bourgeois, 95-2354, p. 3 (La.App. 1st Cir. 6/28/96); 676 So.2d 790, 792. At the time this suit was filed, Louisiana law discouraged summary judgments. However, by Acts 1996, First Extraordinary Session, No. 9, the legislature amended La. C.C.P. art. 966, stating in pertinent part in paragraph A(2):
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends.
Since the amended version of La. C.C.P. art. 966 is a procedural change, we apply it retroactively to this case. La. C.C. art. 6; Short v. Giffin, 96-0361, p. 5-6 (La.App. 4th Cir. 8/21/96); 682 So.2d 249, 253, writ denied, 96-3063 (La.3/7/97); 689 So.2d 1372; NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555, p. 3 (La.App. 2d Cir. 8/21/96); 679 So.2d 477, 479.
During 1997, La. C.C.P. art. 966 was again amended by Acts 1997, No. 483. Pursuant to Section 1 of this act, the legislature amended La. C.C.P. art. 966 C, which addressed the movant's burden of proof, to provide as follows:[5]
(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy *1153 his evidentiary burden of proof at trial, there is no genuine issue of material fact.
In Morgan v. The Earnest Corp., 97-0869, p. 7 (La.App. 1st Cir. 11/07/97); 704 So.2d 272, this court found this amendment to be an interpretive law subject to retroactive application. Section 4 of Act 483 provides that the amendment is intended to clarify Acts 1996, No. 9, § 1 of the First Extraordinary Session of 1996 and to legislatively overrule all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3d Cir. 12/26/96); 685 So.2d 691, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41. Also see Berzas v. OXY USA, Inc., 29,835, pp. 3-5 (La.App. 2d Cir. 9/24/97); 699 So.2d 1149, 1151-1152. Thus, La. C.C.P. art. 966, as amended by Act 483, is likewise applicable to this appeal.

B. The Parties' Contentions
Plaintiffs urge that because this is a "long-latency" case, the exposure rule set forth in Cole v. Celotex Corp., 599 So.2d 1058 (La. 1992), should apply. Plaintiffs assert the trial court erred in applying the law in effect at the time of the manifestation of the disease process (the September 1991 diagnosis of lung cancer) rather than the law in effect at the time of Mr. Pitre's significant exposure to tobacco smoke (alleging a 48-year smoking habit prior to the effective date of the LPLA).
Defendants argue the district court correctly determined that the LPLA governs plaintiffs' claims, citing Brown v. R.J. Reynolds Tobacco Co., 52 F.3d 524 (5th Cir.1995), and its progeny. Based on the reasoning of Brown, defendants assert the applicable law is the law in effect when Mr. Pitre's cause of action accrued, i.e., when his disease manifested itself during 1991. Defendants contend the summary judgment was properly granted because plaintiffs did not produce any evidence to establish that "cigarette smoke did, to a reasonable degree of medical probability, cause damage to Mr. Pitre prior to September 1, 1988 or at any other time."
The parties do not dispute that the LPLA applies prospectively only.[6] Rather, the issue presented is whether Mr. Pitre's exposure and resulting damages were sufficient to fix his claim before the LPLA became effective.

1. Cole v. Celotex Corp.

In Cole v. Celotex Corp., 599 So.2d 1058, three asbestos workers filed suit against the insurer of their employer's executive officers and various asbestos manufacturers, seeking damages for injuries arising from long-term exposure to asbestos while working at the Cities Service refinery in Calcasieu Parish. Plaintiffs alleged that the executive officers negligently failed to provide them with a safe workplace[7] and, in addition to other claims asserted against the manufacturer-defendants, plaintiffs advanced products liability claims.
Plaintiffs' claims against the manufacturer-defendants were dismissed prior to trial leaving only the claims against the insurer-defendant. The parties stipulated that plaintiffs were exposed at the workplace to the manufacturer-defendants' asbestos-containing products, that these products were unreasonably dangerous per se and that the manufacturer-defendants were all legally at fault in causing plaintiffs' asbestos-related occupational diseases.
After trial, the jury concluded that some of the Cities Service executive officers were negligent in failing to provide plaintiffs with a safe workplace in each year from 1945 through 1976, and awarded damages to each plaintiff. Based on instructions to apply comparative fault law in apportioning liability, the jury allocated fault between the executive officers and the manufacturer-defendants, and made a determination that plaintiffs were not contributorily negligent.[8] *1154 Cole v. Celotex Corp., 599 So.2d at 1061-1062.
On appeal, the insurer-defendant argued that the case should be governed by pre-comparative fault law. The Third Circuit agreed and reversed the district court's finding regarding that issue. Applying pre-comparative fault (virile share) law, each plaintiffs' award was significantly reduced. The plaintiffs and the insurer-defendant sought writs, which were granted by the Supreme Court. Cole v. Celotex Corp., 599 So.2d at 1062.
In Cole, the Court addressed whether the provisions of the Louisiana Comparative Fault Law, enacted by Act 431 of 1979, and which became effective on August 1, 1980, were applicable to the case which had commenced after the Act's effective date. The Court stated that the determinative point in time separating prospective from retroactive application of an enactment is generally the date the cause of action accrues. Cole v. Celotex Corp., 599 So.2d at 1063. However, the Court stated it opted not to hinge its decision on the dates on which plaintiffs' causes of action accrued. Rather, the Court addressed La C.C. art. 6, the code's general rule against retroactive application of legislative enactments and the exceptions thereto, and found the "expressed legislative intent" to be dispositive of the issue. Cole, 599 So.2d at 1064.
The Court determined Section 4 of the Act, which states, "[t]he provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective," (underlining added) and Section 7 of the Act, which states, "[t]he provisions of this Act shall become effective on August 1, 1980" provided "a clear and unmistakable expression of legislative intent regarding prospective application...." Id. The Court elaborated that the mere inclusion of this type of a provision in a legislative enactment evidenced a clear legislative intent that the enactment be given prospective application.
The Court next dealt with the issue of how the term "events" should be construed, with respect to the requisites for asserting a cause of action. The Court recognized that pursuant to general principles of tort law the requisites for asserting a cause of action are "a wrongful act and resulting damages." Id. at 1065, citing Crier v. Whitecloud, 496 So.2d 305, 308 (La.1986). The Court also acknowledged another general rule, i.e., "[F]or a negligence cause of action to accrue, three elements are required: fault, causation and damages." Cole v. Celotex Corp., 599 So.2d at 1063, n. 15, citing Owens v. Martin, 449 So.2d 448, 450-451 (La.1984). However, the Court identified these concepts as being designed for handling traditional tort suits and as "inept for identifying the key `events' giving rise to a cause of action for long-term exposure to asbestos in the workplace." Cole v. Celotex Corp., 599 So.2d at 1065. The Court discussed the uniqueness of asbestosis cases and the difficulties of trying to fit such cases within the framework of concepts designed to handle traditional torts:
The difficulties in asbestosis cases arise because, unlike in traditional personal injury cases in which the damage results from a single, identifiable act causing traumatic injury, in asbestosis cases the damage results from a continuous processa slow development of this hidden disease over the years. Compounding the problem, asbestosis cases are characterized by a lengthy latency periodtypically ranging a decade or twoand, consequently, a lengthy temporal separation between the tortious conduct and the appearance of injury. This lengthy latency period renders efforts to pinpoint the date on which the disease was contracted virtually impossible, medically and legally. Further, this inability to pinpoint when injures were sustained in asbestosis cases renders determining the date on which a plaintiff's cause of action accrued a herculean task.

Cole v. Celotex Corp., 599 So.2d at 1065-1066.
*1155 Accordingly, the Court stated it was necessary to determine how "events" would be defined in long-latency occupational disease cases for the purpose of determining whether pre-Act, or comparative fault law applied.
Applying general rules of statutory construction, which mandate that words used by the legislature be given their generally prevailing meaning, the Court found the generally prevailing meaning of "event" to be a significant happening or occurrence. The Court concluded the key relevant events giving rise to a claim in long-latency occupational disease cases are the "repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later." Id. at 1066. The Court found that the pre-Act law applied when the tortious exposures occurring before the Act's effective date were significant and those exposures later resulted in the manifestation of damages. The Court found substantial injury producing exposures giving rise to plaintiffs' claims had occurred prior to the effective date of the Act. Thus, the Court concluded the provisions of the Louisiana Comparative Fault Law were inapplicable and the case was governed by pre-Act law (contributory negligence and virile share principles). Id. at 1068.

2. Brown v. R.J. Reynolds Tobacco Co.

In Brown v. R.J. Reynolds Tobacco Co., 52 F.3d 524, plaintiff, a cigarette smoker who was diagnosed with and treated for throat cancer, filed a products liability suit against various cigarette manufacturers claiming they were responsible for his throat cancer. Brown's cancer was diagnosed in 1991. He alleged the cancer resulted from his forty-five year smoking habit. Brown sought recovery under four theories: unreasonably dangerous per se; ultrahazardous activity; misrepresentation, concealment, and conspiracy; and design defect. The district court granted summary judgment in favor of the cigarette manufacturers, and Brown appealed.
On appeal, the Fifth Circuit faced the same issue presented in this case; i.e., whether the LPLA or Louisiana tort law in place before the effective date of the LPLA (September 1, 1988) would govern the case. The court specifically addressed the issue of whether the applicable law was the law in effect when Brown was significantly exposed to tobacco products or the law in effect when Brown's disease manifested itself (when the cause of action accrued). Urging the applicability of the exposure theory, Brown argued his case was controlled by pre-LPLA law.
The Brown court acknowledged the general rule set forth in Cole v. Celotex Corp., 599 So.2d 1058, i.e., that the determinative point in time separating prospective from retroactive application of an enactment is the date the cause of action accrues. Brown analyzed the LPLA and found it contained no language suggesting that the exposure rule or any other rule other than the general rule should apply.[9] Thus, the court concluded the LPLA applied only to those causes of action that accrued on or after September 1, 1988.
Since Brown could recover under pre-LPLA law if there was evidence that his cause of action accrued before September 1, 1988, the Brown court considered when Brown's cause of action had accrued. Brown's symptoms appeared in early 1991 and the only evidence produced by Brown pertaining to his injury was an affidavit from a doctor, who was an expert in the epidemiology of cancer. According to the Brown decision, the doctor's affidavit stated that there "`can be' a ten-year latency period `between a person's exposure to cigarette smoke and the subsequent development of laryngeal cancer.'" Brown v. R.J. Reynolds Tobacco Co., 52 F.3d at 527. The court noted that the doctor who provided the affidavit had not interviewed Brown, examined Brown, or reviewed Brown's medical records. The court also noted the doctor's affidavit did not discuss Brown's case or how far Brown's cancer had advanced when it was diagnosed and treated. As such, the court found the doctor's affidavit insufficient to show that Brown suffered damages before the effective date of the LPLA. Id. at 527-528.
The Brown court rejected Mr. Brown's suggestion that the court should tailor its *1156 decision to the special circumstances presented by torts causing long-term latency diseases. Although the court recognized the difficulties of applying an accrual test to determine the applicable law in cases involving latent injuries, it stated it was constrained by the language of the LPLA. Because the Act states that it "shall become effective on September 1, 1988" and did not include "arising" or "events" language, the Brown court determined there was no support for departing from the general rule that the applicable law is determined according to the date a cause of action accrues. Based on the court's finding that there was no evidence that Brown sustained injury, latent or otherwise, before the LPLA's effective date, the court concluded that the LPLA was applicable and the district court had properly granted summary judgment in favor of the cigarette manufacturers. Id. at 530.

C. Application of Law
Plaintiff urges that this court should apply Cole to determine the applicable law and defendants urge that this court should follow the rationale of Brown. Since the matter presently before us involves exposure to cigarette smoke and the applicability of the LPLA rather than exposure to asbestos and the applicability of the Louisiana Comparative Fault Law, we recognize that the Cole decision is not necessarily controlling. However, based on plaintiffs' allegations regarding Mr. Pitre's long-term exposure to cigarette smoke, the Cole Court's recognition of the difficulties that arise in determining when a plaintiff's cause of action accrues in tort cases involving latent injuries which result from repeated exposures, and because we find the type of injuries involved herein to be analogous to the injuries involved in Cole, we extend the holding of Cole to this case. We note that in Crawford, William E., Review of Recent Developments: 1991-1992, Torts, 53 La. L.Rev. 1011, 1018 (Jan.1993), the author stated:
[I]t appears that the principles announced by the court in Cole and Champagne[10] are generally applicable to tobacco and lung cancer, determining whether to apply pre-Product Act law and pre-comparative fault law, the accrual of the cause of action, the application of contra non valentem, and the applicable rules of solidarity. (Footnote added.)
Accordingly, we decline to follow Brown as we do not find the mechanical approach of Brown to be compelling.[11] We are convinced that a departure from the general rules for the accrual of a cause of action is warranted in light of the special circumstances presented by tortious exposures which cause long-term latency diseases.
The Cole Court determined "the key relevant events giving rise to a claim in long-latency occupational disease cases are the repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later." Cole v. Celotex Corp., 599 So.2d at 1066. Although Mr. Pitre's disease, if caused solely by cigarette smoking, would not be an occupational disease, we recognize that plaintiffs allege Mr. Pitre developed lung cancer as a result of exposure to asbestos in the workplace and exposure to tobacco smoke. Where a long-latency disease is alleged to have been caused by repeated tortious exposures to more than one substance, we see no logical rationale for applying different rules to determine the applicable law governing each claim. Thus, we find the "exposure rule" set forth in Cole v. Celotex Corp., 599 So.2d 1058 is applicable to this case. Based on that finding, we examine the defendants' motion for summary judgment.
*1157 In the present case, the affidavit of Dr. Richard W. Kearley, Mr. Pitre's attending physician, sets forth that: 1) Mr. Pitre had a history of smoking over two packs per day for greater than fifty years; 2) Dr. Kearley diagnosed Mr. Pitre with malignant neoplasm of the lung, a condition which Dr. Kearley felt was related to Mr. Pitre's long-term smoking history; 3) although the mechanisms are not clear cigarettes contain carcinogens, these carcinogens can cause ongoing damage to the lung; 4) Mr. Pitre was exposed to tobacco smoke before 1988; and 5) the latency period between smoking and the beginning of a rise in lung cancer is approximately twenty years.[12]
The deposition testimony of Dr. Kearley establishes Mr. Pitre was diagnosed with cancer during 1991 after having a period of a few months during which some signs or symptoms were manifested. Dr. Kearley testified that medical science cannot determine when the first initiated cell (the first event in the cancerous progressive transformation) exists. With respect to Mr. Pitre's cancer, Dr. Kearley stated it was possible that it existed in 1987 or during 1991 or anytime in between. Regarding Mr. Pitre's cancer development and its initiation, Dr. Kearley testified, "I think the only thing that I can say from that that I'm very sure about is that I think that if Mr. Pitre would have never smoked, he would not have died from lung cancer."
Because plaintiffs urge that pre-LPLA tort law is applicable to this action, plaintiffs have the burden of proving, pursuant to amended La. C.C.P. art. 966 C(2), that significant "repeated tortious exposures resulting in continuous, on-going damages" occurred prior to the effective date of the LPLA, and that such exposures later resulted in the manifestation of damages in order to prevail. Defendants assert plaintiffs have failed to meet this burden.
The evidence in the record has been considered, and we believe unique questions and issues presented mandate a result anchored in equity and justice. This case arose prior to the July 1, 1997, effective date of Act 483 of 1997, which amended the summary judgment law. Under the law prior to July 1, 1997, it was easier for the party opposing the summary judgment to prevail because the burden was on the mover to negate all essential elements of the non-mover's claim. It was in this context that plaintiffs responded to the defendants' motion for partial summary judgment during the proceedings below.
We recognize the parties in this case, particularly the plaintiffs, might have presented their case differently had they known the legislature would subsequently amend the summary judgment law. We believe justice is best served by remanding this case to allow the parties the opportunity to introduce additional evidence into the record in contemplation of any differences they perceive in the burdens of proof under the new law. See Kaufmann v. Fleet Tire Service of Louisiana, Inc., 97-1428 (La.9/5/97); 699 So.2d 75; Young v. Dupre Transport Co., 97-0591, pp. 6-7 (La.App. 4th Cir. 10/1/97); 700 So.2d 1156, 1159.

III. CONCLUSION
Accordingly, for the reasons set forth herein, we vacate the judgment of the trial court and remand this case for further proceedings consistent with this opinion. We direct the trial court to reconsider the motion for partial summary judgment after the parties have been afforded a reasonable opportunity to supplement the record. The assessment of *1158 costs is to await a final determination of this matter.
VACATED AND REMANDED.
NOTES
[1] Because the ruling on the motion for partial summary judgment was rendered prior to the effective date of Acts 1997, No. 483, there was no agreement among the parties or designation by the judge regarding the finality of the judgment.
[2] The first two cigarette defendants were named in the original petition and the remaining cigarette defendants were named in a supplemental and amending petition.
[3] The claims asserted against one of the asbestos manufacturers have been settled and dismissed.
[4] Judgment in favor of defendants was rendered in open court on June 3, 1996, and a written judgment was signed in favor of defendants on October 15, 1996. An amended judgment was signed on October 22, 1996, which amended the original judgment of October 15, 1996, by inserting a defendant's name in the preamble of the judgment.
[5] Section 1 of Act No. 483 also rewrote paragraph E to provide that "[a] summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case." Paragraphs F and G of La. C.C.P. art. 966 were also deleted by Act 483.
[6] In Gilboy v. American Tobacco Co., 582 So.2d 1263, 1264 (La.1991), a case involving a claim for damages by a smoker against cigarette manufacturers and a vendor, the Supreme Court held the LPLA altered substantive rights and is not retroactive.
[7] In 1976, the Louisiana legislature amended La. R.S. 23:1032 of the Louisiana Workers' Compensation Law to eliminate negligence suits against executive officers of corporate employers. Plaintiffs alleged that defendants failed to provide a safe workplace between 1945 and 1976.
[8] By agreement of the parties, the trial judge decided the insurance coverage issues. The trial court determined that more than one of the insurance policies were triggered and that they were more than sufficient to satisfy each plaintiff's judgment. On appeal, the Third Circuit agreed that there was sufficient insurance coverage for each plaintiff's award.
[9] Section 2 of the Act provides, "This Act shall become effective September 1, 1988."
[10] Champagne v. Celotex Corp., 599 So.2d 1086 (La. 1992), was rendered the same day and as a companion case to Cole v. Celotex Corp.
[11] While we do not follow Brown, we note that the Louisiana Fifth Circuit Court of Appeal followed Brown in Arabie v. R.J. Reynolds Tobacco Company, 96-978 (La.App. 5th Cir. 6/30/97); 698 So.2d 423. The Arabie court affirmed the granting of a summary judgment in favor of the defendant tobacco companies based upon a holding that the LPLA provided the exclusive remedy for plaintiffs (the wife and children of a smoker who had been diagnosed with lung cancer four years after the enactment of the LPLA), where there was no evidence that the smoker's injury was sustained prior to the LPLA's effective date.
[12] Dr. Kearley's affidavit also contains the following information regarding the development of lung cancer:

Although the development of lung cancer is poorly understood, it is generally recognized that bronchogenic lung neoplasms develop from progressive transformation of normal respiratory epithelial cells into atypical cells that eventually become neoplastic. Not all bronchogenic neoplasms develop from progressive transformation. A small amount of cigarette smoke can cause tissue damage to the respiratory tract. Generally recognized authoritative medical literature indicates that this transformation is such that there is usually a latency period of twenty years before the damage becomes manifest.