J^McDONALD, J.
Plaintiffs appeal the trial court’s granting of partial summary judgment in favor of defendant tobacco company, limiting their claims to those governed by the Louisiana Product Liability Act. We affirm.
FACTS AND PROCEDURAL BACKGROUND
Maurice Kemp was diagnosed in November 1997 with adenocarcinoma. At the time he was 46 years old, had been smoking since age 14, and had worked for many years in chemical plants where he was allegedly exposed to asbestos. In June 1998, suit was filed on behalf of Mr. Kemp and his wife, Wendy, against numerous asbestos manufacturers, an asbestos supplier, and cigarette manufacturers, R.J. Reynolds Tobacco Company and Philip Morris Incorporated.[2] The claims against several asbestos manufacturers were settled and/or dismissed in 1999, 2000, and 2001. In October 2001, the tobacco company defendants filed an omnibus motion for summary judgment on all claims, and motions for partial summary judgment based on federal preemption, first amendment of the U.S. Constitution, lack of causation evidence, and any claims not based on the Louisiana Products Liability Act. In January 2002, the tobacco defendants filed a motion to exclude the testimony of Dr. James H. Lutsch, M.D. Also, in January 2002, R.J. Reynolds Tobacco Company filed a motion for summary judgment asserting that plaintiffs had not and could not produce any evidence that Reynolds *776 was a substantial contributing factor in causing Mr. Kemp’s lung cancer.
On January 29, 2002, the trial court heard the pending motions. R.J. Reynolds’ motion for summary judgment was granted and they were dismissed. The motion to exclude the testimony of Dr. Lutsch was denied. The partial summary judgment on the basis of federal preemption was granted on the issues of negligent misrepresentation, violation of consumer protection statutes, and redhibition. On the issues of fraud and deceit, and the liability claims: absolute, unreasonably dangerous, | ¡¡unreasonably dangerous per se, and unreasonably dangerous in design, the motion was denied. The motion based on the first amendment of the constitution was passed. The court heard argument on the issue of the application of the LPLA that primarily turned on when the tort accrued. The defendants argued that until there was a convergence of fault, causation, and damage there was no cause of action and in this case that was not until November 1997 when Mr. Kemp was diagnosed with lung cancer. Therefore, the law to be applied was that in effect in November 1997, which would mean that the only claims available to plaintiff were those provided by La. R.S. 9:2800.52, the Louisiana Products Liability Act. Plaintiffs argued that the date of manifestation of the disease was not the proper date, but rather the date of significant exposure to the carcinogens should be applied, which was prior to the passage of the products liability act. The court allowed the parties time to submit additional briefs and the matter was continued until then.
The court reconvened on February 15, 2002. After additional argument, partial summary judgment was granted in favor of the defendant, Phillip Morris, dismissing all plaintiffs’ non-LPLA claims. The ruling was found to constitute a final judgment pursuant to La. C.C.P. art. 1915(B) and plaintiffs appealed.[3]
ASSIGNMENT OF ERRORS
Appellants urge four assignments of error: 1. “[T]he trial court erred in ruling that both Mr. Kemp’s survival and wrongful death actions are governed by the LPLA; 2. [T]he trial court erred in dismissing all non-LPLA causes of action in Mr. Kemp’s survival action; 3. [T]he trial court erred in retroactively applying the LPLA to Mr. Kemp’s survival action; 4. [T]he trial court erred in ruling that there was no question of material fact as to when Mr. Kemp’s survival cause of action arose.” Appellant briefed assignments of error number two and three together. Determination of whether the LPLA governs appellants’ claims will dispose of both assignments, and we will likewise consider them together. Assignment of error number 4 raises the issue that Rappellees assert is the only one before this court: whether the trial court correctly determined that, for purposes of the application of the LPLA to this matter, plaintiffs failed to produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden of proving that Mr. Kemp’s lung cancer existed before September 1,1988.
LAW AND ANALYSIS
In September 2002, the Louisiana Supreme Court decided Austin v. Abney Mills, Inc., 2001-1598 (La.9/4/02), 824 So.2d 1137. Thereafter, appellants submitted a supplemental brief asserting that the decision answers all of the issues raised in this appeal. We do not agree *777 that the Austin decision has such a sweeping effect. It does, however, definitively dispose of the appellee’s argument that Mr. Kemp’s tort action accrued in November 1997. In Austin, the Supreme Court held that “the date of disability is not the relevant date to decide the issue of when a tort cause of action under La. C.C. art. 2315 accrues in a long-latency occupational disease case in which the individual suffers from the disease.” Austin, supra. Whether Mr. Kemp’s cancer was an occupational disease has yet to be determined; at this point we are dealing only with the alleged effects of tobacco smoke exposure. Whether this is a tort action pursuant to La. C.C. art. 2315 or to the LPLA is one of the issues before us. While we recognize that the context in which claims arise can distinguish them from other similar actions, we do not find that to be the case here.
Further, this court has already decided the issue of which date, that of exposure, or that of manifestation, should be controlling in this type of case in Pitre v. GAF Corp., 97-1024, (La.App. 1 Cir. 12/29/97), 705 So.2d 1149; writ denied, 98-0723 (La.11/19/99), 749 So.2d 666. The Pitre case also involved a plaintiff who smoked for many years and additionally was exposed to asbestos in the workplace. Also similarly, the plaintiff was diagnosed with lung cancer after the effective date of the LPLA, and the tobacco defendants argued that the LPLA provided the exclusive remedy for claims against cigarette manufacturers. In finding that the “exposure rule” Lset forth in Cole v. Celotex Corp., 599 So.2d 1058 (La.1992) was applicable in Pitre the court noted:
Although Mr. Pitre’s disease, if caused solely by cigarette smoking, would not be an occupational disease, we recognize that plaintiffs allege Mr. Pitre developed lung cancer as a result of exposure to asbestos in the workplace and exposure to tobacco smoke. Where a long-latency disease is alleged to have been caused by repeated tortious exposures to more than one substance, we see no logical rationale for applying different rules to determine the applicable law governing each claim. Pitre, at 1156.
Therefore, the “exposure rule” is to be applied in determining the date of the accrual of this tort action.
The decision in Pitre, however, did not reach the issue of whether or not the LPLA provided the exclusive remedy to Mr. Pitre.[4] The appeal was of the trial court’s granting of summary judgment in favor of the tobacco company defendants on June 3,1996 — prior to the effective date of the legislative amendments to the Code of Civil Procedure articles on summary judgment. Because those amendments radically changed the way in which courts ruled on summary judgment motions, it was believed that justice was best served by remanding the case to allow the parties the opportunity to introduce additional evidence into the record in contemplation of any differences they perceived in the burdens of proof under the new law. The case does make clear that “[b]ecause plaintiffs urge that pre-LPLA tort law is applicable to this action, plaintiffs have the *778 burden of proving, pursuant to amended La. C.C.P. art. 966 C(2), that significant ‘repeated tortious exposures resulting in continuous, on-going damages’ occurred prior to the effective date of the LPLA, and that such exposures later resulted in the manifestation of damages in order to prevail.” Pitre, at 1157.
In the context of a defense motion for summary judgment, “repeated tortious exposure resulting in continuous, on-going damage” requires more than proof of a Insignificant history of cigarette smoking prior to September 1988 and knowledge that smoking causes lung disease. La. C.C.P. art. 966 C(2) provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy Ms evidentiary burden of proof at trial, there is no genuine issue of material fact. Emphasis added.
To satisfy his evidentiary burden at trial, plaintiff will have to prove that the exposures prior to September 1988 were “significant and such exposures later resulted[ed] in the manifestation of damages .... ” Austin, 824 So.2d at 1153, citing Cole, at 1066.
In opposition to the motion for summary judgment, plaintiffs submitted the affidavit of Dr. Gerald Liuzza, a clinical pathologist, and excerpts from the deposition of Dr. David Hanson, Mr. Kemp’s treating physician, an oncologist. Dr. Liuzza’s affidavit was based on review of the November 7, 1997 pathology report on Maurice Kemp prepared by Dr. Lim from Earl K. Long Hospital. The affidavit contains several opinions concerning the development of adenocarcinoma in general and applies those opinions to the development of Mr. Kemp’s disease. Similarly, Dr. Hanson’s testimony was based on his understanding of the risk of contracting lung cancer based on a significant history of smoking. Neither of these opinions was based on specific medical facts regarding Mr. Kemp.
The affidavit of Dr. George Hensley, a physician, board certified in anatomical pathology was submitted by defendants. Dr. Hensley examined lung and brain tissue surgically removed from Mr. Kemp in 1997 and 1998. His opinion on the evolution of Mr. Kemp’s lung cancer, expressed to a reasonable degree of medical certainty, was that Mr. Kemp’s cancer was relatively aggressive and fast-growing and there was no reliable scientific evidence to support an assertion that Mr. Kemp suffered irreversible cellular changes that remained indolent for a decade before developing into clinically detectable lung cancer.
^Similarly, after examining Mr. Kemp’s medical records, Dr. Steven Stogner, a physician, board certified in Internal Medicine, Pulmonary Medicine and Critical Care Medicine, testified that Mr. Kemp’s malignancy was aggressive. Dr. Stogner’s affidavit also noted that unlike asbestos, smoking is not an exposure that deposits fibers into the lungs, and that respiratory epithelium is regenerated, repaired, and replaced. This distinction between long-latency occupational diseases, e.g. asbestosis (as in Cole), silicosis (as in Walls), and mesothelioma (as in Austin), and Mr. Kemp’s lung cancer, allegedly caused by exposure to tobacco smoke, is significant, *779 especially in view of the fact that he is required to establish a pre-1988 causative connection between cigarette smoking and his 1997 diagnosis of adenocarcinoma. Mr. Kemp cannot rely on showing that he was exposed and later manifested damages. It is not an arithmetical formulation of exposure plus damage; but rather an equation whereby one proves that exposure equals damage.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318 (La.1993). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.. .The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2); Pitre, supra at 1152.
Our review of the record fails to reveal sufficient factual support to establish that appellant’s exposure to tobacco smoke prior to September 1988 was a significant cause of damage that manifested in lung cancer in November 1997 and resulted in his death one year later. Therefore, we affirm the trial court’s decision that Mr. Kemp’s claims against Philip Morris are those provided by the LPLA and granting the defendant’s motion for summary judgment on all non-LPLA claims. Costs of this appeal are-assessed against appellants, Wendy B. Kemp, Johnny Lee kemp, Jesse K. Kemp, and Jalacee O. Kemp.
AFFIRMED.
McCLENDON, J., dissents with reasons.

. In December 1998, following the death of Mr. Kemp, the suit was amended to a survival action and wrongful death action and the deceased’s children were added as plaintiffs.

. The trial court denied the defense motion for summary judgment on the issue of causation; however, as this decision was not appealed, we do not address it.

. The Louisiana Supreme Court in Walls v. American Optical Corp., No. 98-0455 (La.9/8/99), 740 So.2d 1262, 1268 and also in Anderson v. Avondale Industries, Inc., No.2000-2799 (La.10/16/01), 798 So.2d 93, 99 cites Pitre, noting, incorrectly, that the LPLA was not applied. The issue in Walls was retroactiovity in a survival and wrongful death action in the context of workers' compensation not alleging tobacco exposure; in Anderson, also not a tobacco case, the Court’s approval of Pitre was because the plaintiff’s exposure was prior to the enactment of the LPLA and a retroactive application would be in violation of Plainol’s first test.