|, McCLENDON, Judge,
dissenting.
I respectfully dissent from the majority opinion in the instant case. I believe the trial court erred in granting summary judgment dismissing all non-LPLA claims, which finding was based on the premise that Maurice C. Kemp’s cancer and/or damage therefrom accrued after September 1, 1988, which was the effective date of the LPLA.
In support of their motion for summary judgment, defendants submitted the affidavits of Dr. George Hensley and Dr. Steven Stogner.
Dr. Hensley, a pathologist, stated in his affidavit that he had examined the slide preparations made from the lung and brain tissue surgically removed from Mr. Kemp in 1997 and 1998, respectively. Dr. Hensley stated that his examination of the lung tissue revealed no cellular abnormalities that could be considered pre-malig-nant. It was the opinion of Dr. Hensley that “Mr. Kemp’s cancer was relatively aggressive and therefore fast-growing.” Dr. Hensley further stated, “There is simply no reliable scientific evidence to support the assertion that Mr. Kemp suffered irreversible cellular changes which remained indolent for a decade before developing into clinically detectable lung cancer.” However, Dr. Hensley admitted that “it is sheer speculation to hypothesize a particular time frame for the evolution of the disease process that culminated in Mr. Kemp’s cancer.”
Dr. Steven W. Stogner, an internist practicing pulmonary and critical care medicine, testified by affidavit that he “reviewed the medical history of Maurice C. Kemp,” and that based on these records, “there is no evidence of any lung changes or lung disease before 1987.” Dr. Stogner further stated that “Mr. Kemp’s malignancy was aggressive and, in [his] experience and | ¡¡training, it is more reasonable to conclude that his disease process started some time immediately prior to diagnosis.” However, Dr. Stogner, like Dr. Hensley, *780 admitted that there is “no medically sound way to determine when Mr. Kemp’s lung cancer started or from what source.”
In opposition, plaintiffs presented excerpts of the deposition of Dr. David S. Hanson and the affidavit of Dr. Gerald Liuzza. Dr. Hanson treated Mr. Kemp as an oncologist. Dr. Hanson stated that the duration and severity of cigarette usage were factors in the risk of contracting cancer, and that his “understanding” was that “there’s a period of time between the insult from the carcinogen and whatever cofactors that are required for the overt cancer to develop.” Dr. Hanson noted that Mr. Kemp had started smoking as a teenager and since that time had regularly smoked multiple packs per day. Dr. Hanson further noted that normally he sees lung cancer manifested in patients closer to age sixty, whereas Mr. Kemp was only in his thirties.
Dr. Gerald Liuzza, a pathologist, testified via affidavit that he had examined the “pathology report of Dr. Juanito Lim from Earl K. Long Hospital in Baton Rouge, pertaining to Mr. Maurice Kemp, dated on or about November 7, 1997.” This report diagnosed Mr. Kemp as having been afflicted with an “adenocarcinoma.” In the opinion of Dr. Liuzza, “[a]denocarcinomas, such as that suffered by Mr. Kemp, develop over a period of many years or decades.” Further, Dr. Liuzza stated that “[a]denocarcinomas begin at a cellular level and therefore can exist for a substantial period of time in the body before they are detectable by current medical technologies.” Dr. Liuzza opined that, given Mr. Kemp’s history of heavy cigarette smoking beginning at a young age and extending through the time he was discovered to have cancer at age thirty-seven, it was “more Llikely than not that in 1987, Mr. Kemp had significant and latent, pre-ma-lignant cellular changes that later developed into his lung cancer.”
This Court has held that to defeat a motion for summary judgment seeking to exclude the application of pre-LPLA tort law, “plaintiffs have the burden of proving ... that significant ‘repeated tortiuous exposures resulting in continuous, on-going damages’ occurred prior to the effective date of the LPLA, and that such exposures later resulted in the manifestation of damages in order to prevail.” Pitre v. GAF Corporation, 97-1024, p. 17 (La.App. 1 Cir. 12/29/97), 705 So.2d 1149, 1157. The testimony presented on the motion for summary judgment is conflicting on this point. Defendants’ experts aver that Mr. Kemp’s disease process was fast-growing and of relatively short duration, while admitting that the actual length of time that it took the cancer to develop cannot be stated with scientific certainty. Plaintiffs’ experts take the opposite position that cancers of the type acquired by Mr. Kemp begin on a cellular level with an asymptomatic latency period that very likely extended back to 1987 in this case.
We are mindful that if the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. arts. 966 and 967; Bergeron v. Williams, 99-0886 at p. 5, 764 So.2d at 1087; LeJeune v. Brewster, 97-2342, pp. 3-4 (La.App. 1 Cir. 11/6/98), 722 So.2d 74, 76. In determining whether an issue is “genuine,” courts cannot consider the merits, make credibility determinations, evaluate testimony or |4weigh evidence. Smith v. Our Lady of *781 the Lake Hospital, Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751.
A fact is “material” when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Hardy v. Bowie, 98-2821, p. 6 (La.9/8/99), 744 So.2d 606, 610, Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 at p. 27, 639 So.2d at 751. Simply put, a “material” fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 at p. 27, 639 So.2d at 751.
In the instant case, resolution of the conflicting expert testimony necessitates a credibility determination. Although the expert testimony presented by defendants may be more convincing, it is not the court’s duty on a motion for summary judgment to weigh credibility, as long as the expert testimony has a rational basis and connexity to the facts of the case.[1] Plaintiffs in this case have produced factual support sufficient to meet their burden to show Mr. Kemp’s disease process began prior to the enactment of the LPLA. Therefore, there is a genuine issue of material fact such that summary judgment was inappropriate.
Therefore, I respectfully dissent.

. While a court is entitled to assess whether the reasoning or methodology underlying expert testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue, under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), I am unable to find any Daubert defect in the expert testimony presented herein.