798 So.2d 93 (2001)
John ANDERSON and Eva Washington Anderson
v.
AVONDALE INDUSTRIES, INC.
No. 2000-CC-2799.
Supreme Court of Louisiana.
October 16, 2001.
*95 Janis W. Lemle, Janet L. MacDonell, Joseph L. McReynolds, Deutsch, Kerrigan & Stiles, New Orleans, Counsel for Applicant.
Gerolyn P. Roussel, Perry J. Roussel, Jr., Roussel & Roussel, La Place, Counsel for Respondent.
Tyson B. Shofstahl, New Orleans, Counsel for American Chemistry Council (Amicus Curiae).
Martha Y. Curtis, James M. Garner, Keith A. Kornman, New Orleans, Counsel for Murphy Oil U.S.A. (Amicus Curiae).
VICTORY, J.[*]
At issue in this case is whether former La. C.C. art. 2315.3, allowing recovery of punitive damages for injuries caused by the wanton and reckless disregard for public safety in the storage, handling, and transportation of hazardous substances, applies to this wrongful death case in which the cause of action arose after September 1, 1984, the effective date of La. C.C. art. 2315.3, but the conduct giving rise to the injuries occurred before that date. After reviewing the record and the applicable law, we reverse the judgment of the court of appeal and hold that the application of La. C.C. art. 2315.3 to the facts of this case would be an impermissible retroactive application of the law.

FACTS AND PROCEDURAL HISTORY
From 1968 to 1980, John Anderson ("Anderson") worked for Avondale Industries, Inc. ("Avondale") where he was allegedly exposed to asbestos. On March *96 15, 1994, Anderson was diagnosed with lung cancer and died on October 25, 1994. On August 29, 1994, Anderson and his wife filed suit against Avondale, certain Avondale executive officers, and numerous manufacturers of asbestos products that were sold to Avondale (the "manufacturer defendants"), seeking damages for injuries Anderson allegedly sustained due to his exposure to asbestos. After his death, the suit was amended to seek damages for Anderson's wrongful death, including a claim for punitive damages under La. C.C. art. 2315.3. Certain of the manufacturer defendants filed a peremptory exceptions of no cause of action, claiming that plaintiffs were not entitled to punitive damages under La. C.C. art. 2315.3 because that article did not apply to the facts of this case. The trial court denied the exceptions and the Fourth Circuit Court of Appeal denied a writ application. Anderson v. Avondale Industries, Inc., 00-0775 (La. App. 4 Cir. 9/6/00), 769 So.2d 653. This Court granted the writ and remanded it to the court of appeal for briefing, argument and full opinion. Anderson v. Avondale Industries, Inc., 00-0933 (La.4/3/00), 759 So.2d 78.
On remand, the court of appeal affirmed the judgment of the trial court. Anderson v. Avondale Industries, Inc., 00-0775 (La. App. 4 Cir. 9/6/00), 769 So.2d 653. Relying on Walls v. American Optical Corp, 98-0455 (La.9/8/99), 740 So.2d 1262, the court of appeal held that because a wrongful death cause of action arises at the time of death, which in this case was October 25, 1994, and because former La. C.C. art. 2315.3 was in effect from September 1, 1984 through April 16, 1996, the claim for punitive damages was viable. Further, the court held that "punitive damages are not `new legal consequences to past conduct' as envisioned under [Article 6]" as "punitive damages were available for a number of torts at the time of Mr. Anderson's exposures as well as at the time of his death" and "were also available in most other states including the domiciles of all the defendants in the instant case." Id. at 655-656. We granted the defendants' writ to consider this purely legal issue of first impression.[1]Anderson v. Avondale Industries, Inc., 00-2799 (La.4/12/01), 788 So.2d 1196.

DISCUSSION
Former La. C.C. art. 2315.3, which went into effect on September 4, 1984 and which was in effect at the time of Anderson's death on October 25, 1994, provided in pertinent part:
In addition to general and special damages, exemplary damages may be awarded, if it is proved that plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.
La. C.C. art. 2315.3 (added by 1984 Acts No. 335, Section 1, effective September 4, 1984; repealed by Acts 1996, 1ST Ex.Sess. No. 2, Section 1 effective April 16, 1996). *97 The issue presented is whether former La. C.C. art. 2315.3, which allowed recovery of punitive damages, applies to this wrongful death action where the conduct giving rise to the damages occurred prior to the enactment of the statute, but the wrongful death cause of action did not arise until after the enactment of the statute.
The Legislature did not express its intent as to the prospective or retroactive application of this law. Civil Code Article 6 provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
La. C.C. art. 6; see also La. R.S. 1:2 (stating that no statute therein may be applied retroactively unless it is expressly so stated). "Substantive laws," for purposes of determining whether a law should be applied retroactively, are those which establish new rules, rights, and duties, or change existing ones. Aucoin v. State Through Dept. of Transp. and Dev't, 97-1938, 97-1967 (La.4/24/98), 712 So.2d 62, 67. La. C.C. art. 2315.3 was clearly a substantive law as it created a right to punitive damages against a party who displayed wanton and reckless disregard for public safety in the storage, handling or transportation of hazardous or toxic substances. Because La. C.C. art. 2315.3 was a substantive law and the legislature did not expressly provide that it should be applied retroactively, Civil Code Article 6 requires that it be given prospective application only.
However, citing Walls, plaintiffs argue that because their wrongful death cause of action arose at death (October 25, 1994), and La. C.C. art. 2315.3 was in effect when the cause of action arose, there is no retroactive application. In Walls, we were faced with the issue of whether the Workers Compensation Act, specifically La. R.S. 23:1032 as amended in 1976, which extends tort immunity to executive officers, bars a wrongful death action against the executive officers when the decedent's occupational exposures occurred entirely before the statute was amended, but his death from silicosis did not occur until years after the amendment's effective date.[2]Walls, supra. In Walls, we recognized that:
[d]etermining whether a statute operates retroactively can be difficult when the statute must be applied to a case in which some operative facts pre-date the law while others occurred after the law's effective date. It is imperative to understand that a law may permissibly change the future consequences of an act and even the consequences of acts committed prior to the law's enactment without operating retroactively. 1 M. Planiol, Treatise on the Civil Law, Sec. 243 (La.St.L.Inst.Trans.1959).
Id. at 1266.[3]
In Walls, we adopted the formula set out by Planiol "for identifying the only two situations in which a law operates retroactively:

*98 [a] law is retroactive when it goes back to the past either to evaluate the conditions of the legality of an act, or to modify or suppress the effects of a right already acquired. Outside of those conditions, there is no retroactivity."
Id. at 1267 (citing 1 M. Planiol, Treatise on the Civil Law, § 243 (La.St.L.Inst.Trans. 1959) (emphasis added) and see also Palomeque v. Prudhomme, 95-0725 (La.11/27/95), 664 So.2d 88, 94, n. 9).
In Walls, we held that applying the 1976 amendment of La. R.S. 23:1023 to silicosis exposure that predated the statute, resulting in death after the effective date of the statute, did not result in an impermissible retroactive application of the law. First, we held that the tort immunity for an executive officer is based upon the individual's "status" and is an affirmative defense, not a law governing conduct. Therefore, we concluded that the 1976 amendment does not evaluate the conditions of liability or attach new legal consequences to past acts. Id. at 1267-68. Secondly, we held that the law did not go "back to the past" to "modify or suppress the effects of a right already acquired" because the wrongful death cause of action did not arise, and thus the plaintiffs could not have acquired a "right" in their cause of action for wrongful death, until the date of the death, which occurred after the effective date of the statute. Id. at 1268-70. Therefore, we held that the 1976 amendment applied to the case and barred the plaintiffs from asserting a wrongful death action against the employer's executive officers and their liability insurers.
However, contrary to the court of appeal's ruling in this case, Walls does not *99 stand for the proposition that the accrual of a cause of action during the time a law is in effect necessarily determines the law's application to the claim:
Rather, what we adopt here today is a case by case approach to determine, in cases involving facts that span enough legislative sessions to allow for the innovation of the law, whether any intervening statute, if applied to that case, would operate retroactively. If the statute would operate retroactively under Planiol's definition, then, the two-fold analysis from La. C.C. Art. 6, with which all courts are familiar, must be made. Making the determination of when the cause of action arose for the various causes of action which might be asserted merely provides the temporal guidepost from which a court may determine whether the intervening statute operates retroactively or prospectively, and the consequences that flow from that determination will differ in each case.
Id. at 1271, n. 8 (emphasis added). In a case such as Walls, where a new substantive law essentially extinguishes a cause of action, the date that the cause of action accrues is a crucial determining point in considering the second condition of retroactivity of Planiol's formula, i.e., whether the law modifies or suppresses the effects of a right already acquired. Once a cause of action accrues, a party has a vested right in the cause of action that a new substantive law cannot take away. See also Bourgeois v. A.P. Green Indus., Inc., 00-1528 (La.4/3/01), 783 So.2d 1251 (holding that the Due Process clauses of the United States and Louisiana Constitutions prohibited the Legislature from retroactively abolishing a claim for medical monitoring to causes of action that accrued before the amendment to Article 2315 because the retroactive application of the amendment would divest the injured parties of their vested rights.)
However, Planiol's analysis for retroactivity does not stop with the protection of vested rights; it also prevents retroactive evaluation of the conditions of the legality of past conduct. Under Planiol's first situation in which a law operates retroactively, when a intervening new law creates a cause of action, and thus attaches new consequences to past events, the retroactivity event is the conduct or activity regulated.
Walls made this plain in its discussion of the First Circuit's decision in Pitre v. GAF Corp., 97-1024 (La.App. 1st Cir.12/29/97), 705 So.2d 1149, writ denied, 98-0723 (La.11/19/99), 749 So.2d 666, and the federal court's decision in Arledge v. Holnam, Inc., 957 F.Supp. 822 (M.D.La.1996). In Pitre, the First Circuit declined to apply the Louisiana Products Liability Act (the "LPLA") in a product liability action for wrongful death from cigarette and asbestos exposures because the decedent's exposures occurred prior to the LPLA's enactment. In Walls, we specifically approved of this result, explaining that application of the LPLA in that case would have been an impermissible retroactive operation, in violation of Planiol's first test:
Unlike the exclusivity provision at issue in this case, the LPLA at issue in Pitre sets out the elements of the cause of action for product liability, the standards for evaluating the tortfeasor's conduct, and the remedies or consequences of such conduct. Therefore, it may easily be said that the LPLA evaluates the conditions of the defendant's liability for the conduct at issue and under Planiol's formula would certainly operate retroactively under the facts of that case. (Emphasis added.)
*100 Walls, supra at 1268 n. 5.[4]
Similarly, in Arledge, the plaintiff worked for the defendant from 1956 to 1984, where he was exposed to silica dust. Article 2315.3 was enacted three years after his retirement and long before he knew of his damages.[5] The federal court, citing Planiol's definition of retroactivity, declined to apply Article 2315.3 to the conduct of plaintiff's employer which occurred before the article's effective date, reasoning that: "In this case, Article 2315.3 evaluates the conditions of the legality of conduct. If it were applied to evaluate conduct that occurred before its effective date, it would be retroactive. Therefore, since it has been decided that Article 2315.3 is not retroactive, this Court may not apply it to this case." Arledge, 957 F.Supp. at 827-28. Plaintiffs in Walls argued that Arledge supported their position that the 1976 amendment likewise could not apply. This Court disagreed, again explaining that, "[j]ust as with the Pitre decision ... we find the issues in Arledge to be distinguishable ..." Walls, supra at 1268 n. 5.
As in Pitre and Arledge, the application of former La. C.C. art. 2315.3 to the facts of this case results in a retroactive application of the law in violation of Article 6. Former La. C.C.art. 2315.3 sets out the elements of the cause of action for punitive damages, the standards for liability for the tortfeasor's conduct, and the remedies or consequences of such conduct. Thus, the application of this statute to the facts of this case violates the first condition of retroactivity of Planiol's formula because it evaluates the conditions of the defendants' liability for its past conduct.[6]
*101 Our holding today, that the application of former La. C.C. art. 2315.3 to the facts of this case would be a retroactive application of the law because it evaluates the conditions of the defendants' liability for past conduct, is consistent with the reasoning expressed in the preeminent United States Supreme Court case on the retroactivity of substantive laws, Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In Landgraf, the United States Supreme Court utilized an analysis remarkably similar to Planiol's test to hold that the Civil Rights Act of 1991, which authorized the recovery of compensatory and punitive damages for the first time in civil cases involving claims of sexual discrimination, could not be applied retroactively to a case decided before its enactment and pending on appeal. In so ruling, the Court set out the following test:
When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear Congressional intent in favoring such result. (Emphasis added.)
Landgraf, 511 U.S. at 280, 114 S.Ct. at 1505.
In addressing the portion of Civil Rights Act that authorizes punitive damages, the Court held that because these "punitive" damages "share key characteristics of criminal sanctions," "[r]etroactive imposition of punitive damages would raise a serious constitutional question." Id., 511 U.S. at 281, 114 S.Ct. at 1505. However, the Court noted that it would have to be confronted with a statute that explicitly authorized punitive damages for preenactment conduct before it would have to address whether the statute violated the prohibition against ex post facto laws.[7]Id.
In considering the portion of the Civil Rights Act that authorizes compensatory damages for conduct that was already prohibited before the adoption of the Act,[8] but for which compensatory damages were not available, the Court held that "if applied here, that provision would attach an important new legal burden to that conduct." *102 Id., 511 U.S. at 282-83, 114 S.Ct. at 1506. "The new damages remedy in § 102, we conclude, is the kind of provision that does not apply to events antedating its enactment in the absence of clear congressional intent." Id. The Court explained that "[t]he extent of a party's liability, in the civil context as well as the criminal, is an important legal consequence that cannot be ignored" and stated that in no case in which Congress had not clearly spoken, "have we read a statute substantially increasing the monetary liability of a private party to apply to conduct occurring before the statute's enactment." Id. (Cites omitted).[9]

CONCLUSION
In Walls, we adopted the formula set out by Planiol for identifying the two situations in which a law operates retroactively in violation of La. C.C. art. 6. Under that formula, a law operates retroactively when it either (1) evaluates the conditions of the legality of a past act, or (2) modifies or suppresses the effects of a right already acquired. Because former La. C.C. art. 2315.3 creates a cause of action for punitive damages for certain enumerated conduct, the application of that article to the facts of this case would be an impermissible retroactive application of the law because it would go back to the past to evaluate the conditions of the legality of the defendants' conduct, which occurred before the enactment of former La. C.C. art. 2315.3.[10]
Our holdings in Walls do not demand a different result. Planiol's formula envisions two situations when a law operates retroactively. In this case, just as in Walls, the application of La. C.C. 2315.3 does not modify or suppress the effects of plaintiffs' vested right in their wrongful death cause of action because that cause of action did not arise until after the effective date of the statute. However, contrary to Walls, La. C.C. art. 2315.3 is a law governing conduct and the application of that law to evaluate the conditions of the legality of defendants' past conduct results in the retroactive *103 application of the law, in violation of La. C.C. art. 6.

DECREE
For the reasons expressed herein, the judgment of the court of appeal is reversed and defendants T & N, PLC, and Benjamin Foster Division of AmChem Products' exception of no cause of action is granted.
REVERSED.
JOHNSON, J., concurs.
CALOGERO, C.J., concurs and assigns reasons.
CALOGERO, Chief Justice, concurring.
Plaintiffs rely heavily on this court's opinion in Walls v. American Optical Corp., 98-0455 (La. 9/8/99), 740 So.2d 1262, in their argument that the law at the time of death should be applied in this case. I was not on the panel which decided Walls and do not necessarily agree with the reasons or result set forth therein. For present purposes, however, Walls is a resolved legal issue in our jurisprudence. Yet, Walls, is not controlling under the facts presented in this matter. The circumstances surrounding John Anderson and his injury are factually distinct from the facts presented in Walls.
This is not a situation where the legislature extinguished a cause of action before plaintiff's claim accrued. Here, the legislature created a cause of action after plaintiff suffered harm. Applying the law at the time of death in the instant matter would retroactively impose punishment for activity which was not illegal at the time it was conducted.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Associate Justice Pro Tempore, participating in the decision.
[1] In Bulot v. Intracoastal Tubular Services, Inc., 00-2161 (La.11/13/00), 773 So.2d 152, we granted a writ intending to address whether the application of La. C.C. art. 2315.3 to conduct arising prior to its effective date would be an improper retroactive application of the article under Walls. However, in reviewing the record, we determined that plaintiffs had alleged each of the decedents had some exposure to hazardous or toxic substances after the effective date of La. C.C. art. 2315.3. Because the case came to us as an exception of no cause of action and the plaintiffs pled a cause of action for punitive damages arising from post-1984 conduct, we recalled the writ, stating that, "we express no opinion as to whether plaintiffs could recover punitive damages for pre-1984 conduct." Bulot v. Intracoastal Tubular Services, Inc., 00-2161 (La.2/9/01), 778 So.2d 583, 584 n. 4.
[2] Mr. Walls was employed as a sandblaster for Land & Marine and Coastal from 1964 to 1970, where he was exposed to silica dust. Mrs. Walls and her children asserted that this occupational exposure to silica dust caused Mr. Walls to contract the occupational lung disease silicosis and die from that disease on March 17, 1995, and filed a survival and wrongful death action against the executive officers of his employer. The insurers of the executive officers filed an exception of no cause of action and an alternative motion for partial summary judgment asserting that the plaintiffs' exclusive remedy for their wrongful death claim was in workers' compensation because La. R.S. 23:1032, as amended in 1976, extends the employer's tort immunity to executive officers.
[3] In Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), we discussed the reasons for the difficulties in applying traditional tort concepts to asbestosis cases:

The uniqueness of asbestosis cases and the difficulties of trying to fit such cases within the framework of concepts designed to handle traditional torts has been recognized: "`the factual predicate giving rise to potential liability from asbestos exposure is simply different from those that generated most tort doctrines ... [and thus such cases differ] in legally important aspects from those types of injuries that present tort doctrines were designed to accommodate.'" Ducre v. Mine Safety Appliances, 573 F.Supp. 388, 391, n. 1 (E.D.La.1983), aff'd in part and rev'd in part, 752 F.2d 976 (5th Cir.), reh'g denied, en banc, 758 F.2d 651 (5th Cir.1985) (quoting Thompson v. Johns-Manville Sales Corp., 714 F.2d 581, 583-84 (5th Cir.1983), cert. denied, 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984) (Goldberg, J., dissenting), and noting that "[o]ccupational diseases of the kind at hand are particularly difficult to classify pragmatically within the structured concepts of traditional tort law").
The difficulties in asbestosis cases arise because, unlike in traditional personal injury cases in which the damage results from a single, identifiable act causing traumatic injury, in asbestosis cases the damage results from a continuous processa slow development of this hidden disease over the years. See R.J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776 (5th Cir.1963). Compounding the problem, asbestosis cases are characterized by a lengthy latency period typically ranging a decade or two and, consequently, a lengthy temporal separation between the tortious conduct and the appearance of injury. See, Comment, Liability Insurance for Insidious Disease: Who Picks Up the Tab?, 48 Fordham L.Rev. 657, 665 n. 46 (1980). This lengthy latency period renders efforts to pinpoint the date on which the disease was contracted virtually impossible, medically and legally. Porter v. American Optical Corp., 641 F.2d 1128, 1133 (5th Cir.), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), reh'g denied 455 U.S. 1009, 102 S.Ct. 1649, 71 L.Ed.2d 878 (1982); Classen, An Investigation into the Statute of Limitations and product Identification in Asbestos Litigation, 30 How. L.J. 1, 4 (1987). Further, this inability to pinpoint when injuries were sustained in asbestosis cases renders determining the date on which a plaintiff's cause of action accrued a herculean task.
[4] In Walls, we also commented that we agreed only with the result in Pitre, and not with the court's analysis utilizing the "significant exposure" test from Cole v. Celotex, supra, because "Cole's rationale is inapplicable to wrongful death cases." 740 So.2d at 1268 n. 5.

Cole involved the claims of three employees suffering from injuries caused by long term exposure to asbestos who sued the executive officers of their employer for failure to provide them with a safe place to work. After the exposures, but before the plaintiffs filed suit, the modern comparative fault system, via Act 431 of 1979, became effective, which would have substantially increased plaintiffs' recovery. This Court looked to the unique language in Act 431 which provided that "[t]he provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective." We interpreted the term "events" in the asbestos context to be the "repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later." Cole, 599 So.2d at 1066.
We note that the key issue in this case is not whether the Cole "significant exposures" test applies to this wrongful death action, but whether the application of former La. C.C. art. 2315.3 to the facts of this case results in a retroactive application of the law under Planiol's analysis.
[5] Plaintiff had asserted a claim for punitive damages against the employer pursuant to this Court's holding in Billiot v. B.P. Oil Co., 645 So.2d 604 (La.1994). Billiot was subsequently overruled by Adams v. J.E. Merit Construction, Inc., 97-2005 (La.5/19/98), 712 So.2d 88.
[6] Every other court but one that has specifically addressed the issue of whether former article 2315.3 can be applied to conduct occurring before the effective date of the act, although not in the context of a wrongful death action, has likewise answered in the negative, each finding that to do so would be an impermissible retroactive application of the law. Young v. American Hoechst Corp., 527 So.2d 1102 (La.App. 1 Cir.1988), writ denied, 532 So.2d 159 (La.1988); Scaffidi v. Thompson-Hayward Chemical, Inc., 1997 WL 469966 (E.D.La.1997); Easson v. Veliscol Chemical Corp., 1991 WL 121192 (E.D.La. 1991); Williams v. A.C. & S., Inc., 700 F.Supp. 309 (E.D.La.1988); but see Bulot v. Intracoastal Tubular Services, Inc., 98-2105 (La.App. 4 Cir. 2/24/99), 730 So.2d 1012 (holding that, based on the Fourth Circuit's prior precedent that a wrongful death action arises at the time of death and the law effective on the date of death applies to a wrongful death action, 2315.3 applied to entitle the decedents' survivors to punitive damages for their wrongful death actions, but did not apply to entitle the decedent's survivors to punitive damages for their survival actions), writ recalled as improvidently granted, 00-2161 (La.2/9/01), 778 So.2d 583, see infra at n. 1.
[7] This Court has never expressly addressed whether the Ex Post Facto Clause of the Louisiana Constitution applies to civil penalties and we need not reach that issue today.
[8] Plaintiffs' argument that, because the manufacturer defendants' conduct was illegal prior to and after the enactment of La. C.C.art. 2315.3, application of the article does not have retroactive effect was expressly rejected by the Court reasoning in Landgraf. that "[e]ven when the conduct in question is morally reprehensible or illegal, a degree of unfairness is inherent whenever the law imposes additional burdens based on conduct that occurred in the past." Id., 511 U.S. at 282 n. 35, 114 S.Ct. at 1506 n. 35.
[9] The Court also noted that "[t]he state courts have consistently held that statues changing or abolishing limits on the amount of damages available in wrongful-death actions should not, in the absence of clear legislative intent, apply to actions arising before their enactment." Id., 511 U.S. at 284 n. 36, 114 S.Ct. at 1507 n. 36 (cites omitted).
[10] Plaintiffs also argue, and the court of appeal agreed, that former La. C.C. art. 2315.3 does not attach "new legal consequences to past conduct" as envisioned by Article 6 because punitive damages were available in Louisiana for "a number of torts at the time of Mr. Anderson's exposures as well as at the time of his death" and they "were also available in most other states including the domiciles of all of the defendants in the instant case." Anderson v. Avondale Industries, Inc., 769 So.2d at 655-56. We reject this argument. Although the court of appeal does not specify the statutes under which punitive damages were available for "a number of torts," this argument is irrelevant because punitive damages were not available in Louisiana for this tort at the time of this conduct. Plaintiffs point to La. C.C. arts. 3545 and 3546 as support for their assertion that "plaintiff is entitled to punitive damages if such damages are allowed by the state of defendant's domicile or by the state where a defendant's tortious conduct occurred." Based on these articles, plaintiffs claim that because defendants did business, and were domiciled, in states that allowed punitive damages, the application of La. C.C. art. 2315.3 would not be retroactive because punitive damages have always been a liability with which defendants have had to deal. We reject this argument as well. This case does not involve the application of some other state's law. Plaintiffs have asserted a cause of action under former La. C.C. art. 2315.3, and the sole issue before us is whether former La. C.C. art. 2315.3 applies to the facts of this case, not whether some other states' law applies under the conflict of law provisions found in La. C.C. arts. 3545 and 3546.