WHIPPLE, C.J.
[2In this appeal, the State of Louisiana challenges the trial court’s judgment, which, inter alia, granted defendant’s exceptions as to the State’s causes of action filed pursuant to the Sledge Jeansonne Louisiana Insurance Fraud Prevention Act, La. R.S. 22:1931 et seq. (“the Sledge Jeansonne Act”) and some of the causes of action filed pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401 et seq. (“the Unfair Trade Practices Act”), and dismissed those claims with prejudice. For the following reasons, we affirm those portions of the judgment.[1]
FACTS AND PROCEDURAL HISTORY
On April 18, 2013, defendant, Dr. Lynn E. Foret, pled guilty in the United States District Court for the Western District of *702 Louisiana, pursuant to an amended bill of information, to one count of federal health care fraud in violation of 18 U.S.C. § 1347. According to the “Stipulated Factual Basis for Guilty Plea,” which was signed by defendant, from 2003 to December 2009, defendant, a medical doctor who specialized in orthopedic surgery, engaged in a scheme of treating patients with lower-cost steroid knee injections while falsely billing Medicare, Medicaid, and private insurance companies for the more costly Hyalgan injections. As a result of this fraudulent billing, defendant received reimbursement from Medicare, Medicaid, and private insurance companies totaling $948,249.11. The one count listed in the amended bill of information to which defendant pled guilty was, “[i]n furtherance of the scheme and artifice to defraud,” billing a |sHyalgan injection with a date of service of February 4, 2009, for which Medicare paid on March 6, 2009.
Following defendant’s guilty plea to federal health care fraud, the State of Louisiana through the Attorney General filed the instant civil suit against defendant in the Nineteenth Judicial District Court on May 31, 2013, pursuant to both the Sledge Jeansonne Act and the Unfair Trade Practices Act. In its petition, the State set forth that in accordance with the provisions of the Sledge Jeansonne Act, the Attorney General has the authority to institute a civil action in the Nineteenth Judicial District Court to seek a civil monetary penalty from any person who violates any provision of the Insurance Fraud Statute, LSA-R.S. 22:1924, and further contended that defendant’s guilty plea in federal court to a violation of 18 U.S.C. § 1347, which “is nearly identical to certain provisions of LSA-R.S. 22:1924,” should constitute a violation of LSA-R.S. 22:1924. (R. 4, 5). Accordingly, the Attorney General sought actual damages [2] in accordance with LSA-R.S. 22:1931.6(A)(1), a civil fine not to exceed $10,000.00 per violation in accordance with LSA-R.S. 22:1931.6(B), and civil penalties of three times the benefit pursued in accordance with LSA-R.S. 22:1931.6(C). Additionally, the Attorney General sought to recover any costs or fees incurred in investigations or these proceedings[3] and the eventual forfeiture of any property derived directly or indirectly from any gross proceeds traceable to defendant’s violation of 18 U.S.C. § 1347.[4]
l4With regard to the claims asserted in accordance with the Unfair Trade Practices Act, the State contended that defendant’s aforementioned conduct was also subject to the provisions of LSA-R.S. 51:1405, which declares as unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce. Thus, the State sought the imposition of another civil penalty in accordance with LSA-R.S. 51:1407(B). In addition to this civil penalty, the State contended that defendant had engaged in a method, act, or practice with the intent to defraud and was thus subject to the imposition of an additional penalty pursuant to LSA-R.S. 51:1407(B), not to exceed $5,000.00 per violation.
In response, defendant filed decli-natory and dilatory exceptions, as follows: (1) Declinatory Exception Number 1 of Impermissible Retroactive Application of a Substantive Statute, contending that inasmuch as the provisions of the Sledge Jean-sonne Act became effective on August 1, *703 2012, the State, in setting forth causes of action and demands pursuant to this Act, was seeking to apply the Sledge Jeansonne Act in an impermissibly retroactive manner; [5] (2) Declinatory Exception Number 2 of Impermissible Retroactive Application of a Substantive Statute, contending that the State was seeking to apply the provisions of LSA-R.S. 51:1407(B) of the Unfair Trade Practices Act in an impermissible retroactive manner to the extent that it was requesting civil penalties against For-et as to any claims prior to June 2, 2006, the effective date of that provision; (3) Declinatory Exception of 1 ¿Improper Venue, contending that venue in the Nineteenth Judicial District Court was improper as to the claims brought pursuant to the Unfair Trade Practices Act, which requires the action to be brought against him only in the parish of his domicile, ie., Calcasieu Parish, especially in view of the dismissal of any claims against him under the provisions of the Sledge Jeansonne Act (of which defendant sought dismissal through his “Declinatory Exception Number 1 of Impermissible Retroactive Application of a Substantive Statute”); and (4) Dilatory Exception of Vagueness and Ambiguity, contending that the petition did not contain clear statements of the causes of action arising out of the transaction or occurrence that is the subject matter of the litigation.
Following a hearing on the exceptions, the trial court signed a judgment dated November 27, 2013, wherein the court maintained the Declinatory Exceptions of Impermissible Retroactive Application of a Substantive Statute, maintained the Decli-natory Exception of Improper Venue, and pretermitted decision on the Dilatory Exception of Vagueness and Ambiguity. From this judgment, the State sought to appeal directly to the Louisiana Supreme Court, contending that “[t]he trial court’s judgment involved a decision that certain laws of the state of Louisiana are unconstitutional” and, therefore, that “the Louisiana Supreme Court has original jurisdiction.”
However, by per curiam opinion and order issued March 14, 2014, the Supreme Court transferred the appeal to this court. In its per curiam, the Supreme Court noted that while the trial court’s oral reasons “indicate its decision to sustain the exception may have been based on constitutional grounds,” there was no declaration of unconstitutionality in the trial court’s judgment. Accordingly, the Supreme Court concluded that there was no | fibasis for its exercise of appellate jurisdiction and transferred the appeal to this court. State v. Foret, 2014-0257 (La.3/14/14), 136 So.3d 792 (per curiam).
Thereafter, on June 6, 2014, this court issued a Rule to Show Cause Order, noting from our examination of the record that the November 27, 2013 judgment at issue appeared to lack appropriate decretal language disposing of and/or dismissing the State’s claims. Accordingly, the parties were ordered to show cause by briefs whether the appeal should or should not be dismissed. However, this court further ordered that if the trial court signed an amended judgment addressing the defect, *704 the parties could request or the trial court could order the appellate record supplemented with the amended judgment.
In response to the Rule to Show Cause Order, the trial court signed a Final Judgment on July 8, 2014, again maintaining the Exceptions of Impermissible Retroactive Application of a Substantive Statute, but additionally providing that the State’s causes of action under the Unfair Trade Practices Act for activities occurring prior to June 2, 2006 are dismissed with prejudice and that the State’s purported causes of action arising under the Sledge Jean-sonne Act are dismissed with prejudice. With regard to the Declinatory Exception of Improper Venue, the judgment provided that the exception was maintained, “with the [c]ourt finding the proper venue to be in Calcasieu Parish.” The trial court again pretermitted ruling on the Dilatory Exception of Vagueness and Ambiguity in light of its ruling on the venue exception.[6]
[ 7After the appellate record was supplemented with the July 8, 2014 Final Judgment, this court issued an order dated September 10, 2014, concluding that “[sjince the trial court found Calcasieu Parish to be the [p]arish of proper venue in this matter, ... the trial court erred in deciding the Dilatory Exceptions of Impermissible Retroactive Application of a Substantive Statute ... and dismissing the State of Louisiana’s ‘causes of action’ arising under La. R.S. 51:1401 et seq. and La. R.S. 22:1931 et seq.” Thus, this court vacated the November 27, 2013 judgment and further vacated the July 8, 2014 judgment “in all respects other than the decree sustaining [defendant’s] Declinatory Exception of Improper Venue.” This court further remanded the matter to the trial court with instructions to “dismiss the action or transfer it to a court of proper venue, as appropriate, within 15 days of the date of this order.” State v. Foret, 2014-0419 (La.App. 1st Cir.9/10/14).
Thereafter, both the State and defendant sought review of our ruling in the Louisiana Supreme Court, and by per cu-riam issued January 16, 2015, the Supreme Court concluded as follows:
[T]he lower courts erred in finding venue was improper in East Baton Rouge Parish as to the [Unfair Trade Practice Act] claim. The [Sledge] Jeansonne Act sets forth a mandatory venue for that claim in East Baton Rouge Parish pursuant to La. R.S. 22:1931.3(E)- Because there is no common venue for the [Sledge] Jeansonne Act and the [Unfair Trade Practices Act] claims, the doctrine of ancillary venue applies, making East Baton Rouge Parish a proper venue for both claims.
Therefore, venue is also proper in East Baton Rouge Parish as to the [Unfair Trade Practices Act] claim under the doctrine of ancillary venue. See Underwood v. Lane Memorial Hosp., 97-1997 (La.7/08/98), 714 So.2d 715. Because venue was proper as to both claims in East Baton Rouge Parish, the district court did not err in reaching the remaining exceptions.
Thus, the Supreme Court granted the applications for supervisory writs and ordered that the “judgment of [the] court of appeal- is vacated insofar as it|sholds venue is not proper in East Baton Rouge Parish.” The Court further ordered that the “case is remanded to the court of appeal to consider the remaining assign *705 ments of error.”[7] State v. Foret, 2014-2123 (La.1/16/15), 155 So.3d 514, & 2014-2097 (La.1/16/15), 156 So.3d 43. Accordingly, we now address the State’s assignments of error with due regard to the Supreme Court’s ruling that venue as to both the Sledge Jeansonne Act claims and the Unfair Trade Practices claims is proper in East Baton Rouge Parish.
On appeal, the State lists the following assignments of error:
(1) The trial court erred in maintaining defendant’s exceptions because it is the date on which a person’s guilty plea occurs, not the time the fraudulent acts took place, that determines the prospective nature of application of LSA-R.S. 22:1931 et seq.
(2) The trial court erred in not finding that Foret’s guilty plea to health care fraud constitutes regulated activity as interpreted in longstanding cases governing retroactivity of the law.
(3) The trial court erred in maintaining Foret’s declinatory exception of improper retroactive application of LSA-R.S. 51:1405 for pre-June 2006 conduct before transferring the claims under that statute to Calcasieu Parish.
|flBecause the Supreme Court has now ruled that venue as to the Unfair Trade Practices Act claims was proper in East Baton Rouge Parish and, thus, that the .trial court did not err in reaching the remaining exceptions, we will not address assignment of error number three as it has been rendered moot.[8]
DISCUSSION
Claims filed Pursuant to the Sledge Jeansonne Act (Assignments of Error Nos. 1 and 2)
For the purpose of protecting “the health, safety, and welfare, of the citizens of this state,” the Louisiana Legislature enacted, by Acts 2012, No. 862, § 1, the Sledge Jeansonne Act,[9] LSA-R.S. 22:1931 et seq., to grant the Louisiana Attorney General and his assistants, as agents of the State, “the ability, authority, and resources to pursue civil monetary penalties, liquidated damages, or other remedies to protect the integrity of the insurance industry from persons who engage in fraud, misrep *706 resentation, abuse, or other illegal practices ... in order to obtain payments to which these insurance providers or persons are not entitled.” LSA-R.S. 22:1931(A). In furtherance of this stated purpose, LSA-R.S. 22:1931.3 authorizes the Attorney General to bring a civil action in the Nineteenth Judicial District Court “to seek recovery from any person or persons who violate any provision of R.S. 22:1924,” which governs insurance fraud.[10]
[ mThe Sledge Jeansonne Act sets forth the relevant burden of proof in LSA-R.S. 22:1931.4, providing that the burden of proof shall be a preponderance of the evidence, but that “[p]roof by a preponderance of the evidence of a violation of R.S. 22:1924 shall be deemed to exist if the defendant has pled guilty ... in any federal ... court when such charge arises out of circumstances which would be a violation ' of R.S. 22:1924.” With regard to the civil penalty, the Sledge Jeansonne Act grants the Attorney General the right to seek such a penalty against, among others, “[a] person who has entered a plea of guilty ... in federal ... [court] of criminal conduct arising out of circumstances which would constitute a violation of R.S. 22:1924.” LSA-R.S. 22:1931.5(4).
Because the Sledge Jeansonne Act became effective on August 1, 2012, nearly three years after the occurrence of the last fraudulent conduct that gives rise to this claim, but approximately eight months before defendant entered his guilty plea, the essential question presented is whether the State through the Attorney General may rely upon the provisions of the Sledge' Jeansonne Act to seek damages and penalties against defendant herein. In its first assignment of error, the State contends that the trial court erred in finding that the State’s attempt to assert claims against defendant under the Sledge Jean-sonne Act constituted an improper retroactive application of the law to fraudulent acts by defendant that occurred prior to effective date of the Act. The State contends that the express language of LSA-R.S. 22:1931.5(4) of the Sledge Jeansonne Act specifically authorizes the Attorney General to seek a civil monetary penalty based on h,circumstances (the entering of a guilty plea) that postdate the underlying fraudulent conduct.
The State asserts that because the Attorney General is authorized to bring an action against a person who enters a guilty plea to “criminal conduct arising out of circumstances which would constitute a violation of R.S. 22:1924,” the plain language of the statute demonstrates that it is the guilty plea, not the underlying fraudulent conduct, that gives the Attorney General the authority to act. Thus, the State argues, because defendant pled guilty to federal insurance fraud approximately eight months after the effective date of the Sledge Jeansonne Act, the State’s assertion of claims against defendant under the Act do not constitute an improper retroactive application of the Act.
*707 In enacting La. Acts 2012, No. 862, creating the Sledge Jeansonne Act, the Legislature did not expressly state its intent as to the prospective or retroactive application of this law. Louisiana Revised Statute 1:2 provides that “[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated.” See also LSA-C.C. art. 6 (stating that “[i]n the absence of contrary legislative expression, substantive laws apply prospectively only”). While LSA-R.S. 1:2, unlike LSA-C.C. art. 6, does not distinguish between substantive or procedural and interpretative laws, the jurisprudence has consistently regarded the two provisions as co-extensive, with LSA-R.S. l:2’s prohibition being construed to apply only to substantive, and not procedural or interpretative, legislation. Church Mutual Insurance Company v. Dardar, 2013-2351 (La.5/7/14), 145 So.3d 271, 279 n. 9. “Substantive laws,” for purposes of determining whether a law should be applied retroactively, are those which establish new rules, rights, and duties, or |^change existing ones. Anderson v. Avondale Industries, Inc., 2000-2799 (La.10/16/01), 798 So.2d 93, 97.
The Sledge Jeansonne Act is clearly a substantive law, as it created the statutory right and authority of the Attorney General to bring a civil action to collect damages and penalties against individuals who commit insurance fraud. Thus, because the Sledge Jeansonne Act is a substantive law and the legislature did not expressly provide that it should be applied retroactively, LSA-R.S. 1:2 requires that it be given prospective application only. See Anderson, 798 So.2d at 97 (because former LSA-C.C. art. 2315.3 was substantive, LSA-C.C. art. 6 required that it be given prospective application only).
However, citing Walls v. American Optical Corporation, 98-0455 (La.9/8/99), 740 So.2d 1262, the State argues that there is no impermissible retroactive application of the Act herein. Instead, the State argues, the plain language of the Sledge Jean-sonne Act demonstrates that it is the guilty plea, not the antecedent conduct, that actually gives rise to the Attorney General’s right to act herein and, thus, the application of the Act, based on defendant’s guilty plea is prospective, not retroactive. In Walls, the Louisiana Supreme Court recognized the difficulty of determining whether a statute can be applied to a case, like the instant case, where some operative facts predated the enactment and others occurred after the statute’s effective date. Walls, 740 So.2d at 1266. The Court explained that a statute is not necessarily “retrospectively” operating merely because it is applied in a case arising from conduct antedating the statute’s enactment or upsets expectations based on prior law. Walls, 740 So.2d at 1266. Instead, to determine whether or not a statute is impermissibly retroactive, the Court | ^adopted the formula set forth by Planiol, identifying only two situations in which a law operates retroactively:
[A] law is retroactive when it goes back to the past either to evaluate the conditions of the legality of an act, or to modify or suppress the effects of a right already acquired. Outside of those conditions, there is no retroactivity.
Walls, 740 So.2d at 1267 (quoting 1 M. Planiol, Treatise on the Civil Law, § 243 (La.St.L.Inst.Trans.1959)). Thus, employing Planiol’s formula to determine whether (impermissible) retroactive application would occur if the provisions of the Act were applied in the instant case, we must ask whether the Sledge Jeansonne Act either: (1) evaluates the conditions of the legality of a past act, or (2) modifies or suppresses the effects of a right already acquired. If application of the Act pro *708 duces neither of these two consequences, then it operates prospectively only and will apply herein. '
In Walls, the Supreme Court held that applying the 1976 amendment of LSA-R.S. 23:1032 (which granted tort .immunity to executive officers) to a wrongful death action where the silicosis exposure predated the statute, but the resulting death occurred after the effective date of the statute, did not result in an impermissible retroactive application of the law. Walls, 740 So.2d at 1270. Employing Planiol’s formula, the Supreme Court concluded, first, that.the 1976 amendment did not evaluate the conditions of liability or attach new legal consequences to past acts because the provision granting immunity to an executive officer was based upon the individual’s “status” and was. not a law governing “conduct.” Walls, 740 So.2d at 1267-1268. Secondly, the Gourt held that the law did not go “back to the past” to “modify or suppress the effects of a right already acquired,” because the wrongful death cause of action did not arise, and thus the right in the cause of action was not acquired, until the date of death. Walls, 740 So.2d at 1268-1270. Therefore, the Court held, the amendment to LSA-R.S. 23:1032 applied to the case therein and barred plaintiffs’ claims. Walls, 740 So.2d at 1270.
 However, as the Louisiana Supreme Court later clarified in Anderson, the Court’s opinion in Walls does not stand for the proposition that the accrual of a cause of action during the time a law is in effect necessarily determines the law’s application to the claim. Anderson, 798 So.2d at 98-99. As the Court explained, in a case such as Walls, where a new substantive law essentially extinguishes a cause of action, the date that the cause of action accrués is a crucial determining point in considering the second condition of Planiol’s rétroaetivity formula, ie., whether the law modified or suppressed the effects of a right' already acquired. Anderson, 798 So.2d at 99.
 Nonetheless, as instructed by the Court, Planidl’s analysis for retroactivity (in violation of LSA-C.C. art. 6) does not only address the protection of vested rights (ie., the second prong of his analysis); it also prevents retroactive evaluation of the conditions of the legality of past conduct (the first prong of Planiol’s analysis). Thus, under the first condition of Planiol’s analysis as to whether a law applies or operates retroactively, “when a[n] intervening new law creates a cause of action, and thus attaches new .consequences to past events, the retroactivity event is the conduct or activity regulated.” Anderson, 798 So.2d at 99 (emphasis added). In Anderson, the Supreme Court used this analysis and determined that the application of former LSA-C.C. art. 2315.3 (authorizing punitive damages for wanton or reckless behavior in the storage, handling, or transportation .of hazardous or toxic . substances) to alleged wanton or reckless conduct occurring before the effective date of the article violated |1fithe first condition of retroactivity in Planiol’s formula because it evaluated the conditions of the- defendant’s liability for its past conduct. Anderson, 798 So.2d at 100.
Similarly, in the instant case, the Sledge Jeansonne Act evaluates the conditions of the legality of conduct. And, contrary to the State’s argument in its second assignment of error, the conduct regulated by the Sledge Jeansonne Act is a person’s act of “fraud, misrepresentation, abuse, or other illegal practices ... in *709 order to obtain payments to which these ... persons are not entitled,” not a subsequent guilty plea to such conduct.[11] LSA-R.S. 22:1931. The Act grants the Attorney General a cause of action to seek redress for a party’s fraudulent conduct, sets forth the relevant burden of proof, and provides for the damages and penalties that are the consequences |1Bof such fraudulent conduct. LSA-R.S. 22:1931 et seq. Thus, application of the Sledge Jean-sonne, Act, to defendant’s fraudulent conduct herein, which occurred before the effective date of the Act, would violate the first condition of retroactivity under Pla-niol’s formula because it evaluates the conditions of defendant’s liability for his past conduct. As such, application of the Sledge Jeansonne Act herein would result in an impermissible retroactive application of the law in violation of LSA-R.S. 1:2. See Anderson, 798 So.2d at 100.
Accordingly, we conclude that the trial court correctly maintainéd defendant’s exception and dismissed the "State’s claims filed pursuant to the Sledge Jeansonne Act. Moreover, as stated in footnote eight, to the extent that the State similarly argued in the trial court below that it was not seeking to retroactively apply the' penalty provisions of the Unfair Trade Practices Act to defendant herein, we likewise find no error in the trial court’s ruling regarding the limited applicability of the Unfair Trade Practices Act herein, ie., that it can only apply to conduct that occurred after its enactment on June 2, 2006. These assignments of error lack merit.
*710 CONCLUSION
' For the above and foregoing reasons, the portions of the July 8, 2014 judgment of the trial court that (1) dismissed all of the State’s causes of action filed pursuant to the Sledge Jeansonne Act, and (2) dismissed the State’s causes of action under the Unfair Trade Practices Act for activities occurring prior to June 2, 2006, are hereby affirmed. This matter is remanded for further proceedings consistent with the views' expressed herein. Costs of this appeal in the amount of $1,433.00 are assessed against the State of Louisiana through the Attorney General.
AFFIRMED.
' HIGGINBOTHAM, J., dissents and assigns written reasons.

. To the extent that the Louisiana Supreme Court has ruled on the portion of the trial court’s judgment granting defendant’s decli-natory exception of improper venue, we do not address that portion of the judgment.

.The amount of actual damages sought was set forth in detail in the petition and totaled $478,838.69.

. See LSA-R.S. 22:1931.6(D).

. See LSA-R.S. 22:1931.12.

. We note that a contention that a cause of action asserted by a plaintiff is an impermissible attempt to retroactively apply a substantive statute is, in essence, a claim that the plaintiff has failed to state a cause of action, which is raised by a peremptory exception raising the objection of no cause of action. See Anderson v. Avondale Industries, Inc., 2000-2799 (La. 10/16/01), 798 So.2d 93, 102-103. However, courts look through the caption of pleadings in order to ascertain their substance and to do substantial justice to the parties. Southeastern Louisiana University v. Cook, 2012-0021 (La.App. 1st Cir.9/21/12), 104 So,3d 124, 127-128.

. The trial court further provided in the Final Judgment that "there is no just reason for delay” and that the judgment was expressly designated as a final judgment under the provisions of LSA-C.C.P. art. 1915(B).

.At the outset, and to determine precisely whát is before us, we note that to the extent the Supreme Court vacated this court’s September 10, 2014 ruling only "insofar as it holds venue is not proper in East Baton Rouge Parish,” the portions of our ruling that vacated the trial court’s July 8, 2014 judgment "in all respects other than the decree sustaining [defendant’s] Declinatory Exception of Improper Venue” would, at first glance, seem to remain in full force. (Emphasis added). However, we note that the Supreme Court specifically found that the trial court "did not err in reaching the remaining exceptions.” Further, it directed that-this court "consider the remaining assignments of error,” which challenge other portions of the trial court’s July 8, 2014 judgment (i.e., the trial court’s rulings on the Dilatory Exceptions of Impermissible Retroactive Application of a Substantive Statute) that we had vacated in our September 10, 2014 ruling. Thus, we conclude that the Supreme Court’s action of January 16, 2015 in fact reinstated those .portions of the trial court’s July 8, 2014 judgment that had reached the merits of the Dilatory Exceptions of Impermissible Retroactive Application of a Substantive Statute.

. Nonetheless, we note that to the extent the State argued in the trial'.court below that it was not seeking to retroactively apply the penalty provisions of the Unfair Trade Practices Act, that argument lacks merit for the same reasons as. set forth herein in our discussion of the Sledge Jeansonne Act claims.

. The Act was named in honor of Kim Sledge and Rhett Jeansonne, who were murdered in 2011 while performing their duties as insurance fraud investigators for the Louisiana Department of Insurance. LSA-R.S. 22:1931(B) & (C).

. Louisiana Revised Statute 22:1924 provides, in pertinent part, that "[a]ny person who, with the intent to ... defraud ... any insurance company, or the Department of Insurance,” presents, or causes to be presented, any statement containing material information that is “false, incomplete, or fraudulent” in support of a claim for payment pursuant to an insurance policy or who “[knowingly] and willfully commit[s] health care fraud” is guilty of a felony. LSA-R.S. 22:1924(A)(1), (A)(2)(b) & (A)(3)(a). As defined therein, “[h]ealth care fraud” means "[t]o execute a scheme or artifice to defraud any health care benefit program” and "[t]o obtain, by means of fraudulent claims, or false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program.” LSA-R.S. 22:1924(3)(b).

. In its second assignment of error, the. State, .citing LSA-R.S. 22:1931.5(4), argues that the conduct regulated by the Sledge Jean-sonne Act is the guilty plea rather than the fraudulent conduct because the State does not acquire its cause of action until a person pleads guilty to some fraudulent insurance act. Thus, according to the State, the relevant retroactivity event is not the date the fraudulent acts took place, but, instead, the date upon which the person enters a guilty plea. We disagree.
Louisiana Revised Statute 22:1931.5 details the circumstances in which the Attorney General, within such a civil action authorized by LSA-R.S. 22:1931.3, may seek a civil penalty, and includes the authority to seek a penalty against: any person determined by a court of competent jurisdiction to have violated any provisions of LSAR.S.. 22:1924; any person who has violated a settlement agreement entered into pursuant to the Sledge Jeansonne Act; a person found to be liable in a civil action filed in federal court pursuant to various federal statutes; or a person who has entered a guilty plea or nolo contendere, has participated in a pretrial diversion program, or has been convicted in federal or state court of “criminal conduct arising out of circumstances which would constitute a violation of R.S. 22:1924.” LSA-R.S. 22:1931.5.
Moreover, as stated above, the Louisiana Supreme Court has explained that the accrual of a cause of action during .the time a law is in effect does not necessarily determine the law's application to á claim. Anderson, 798 So.2d at 98-99. While the State’s cause of action (asserted through the Attorney General) for civil penalties, may not accrue until there has been a determination by a court of competent jurisdiction that the defendant has engaged in a fraudulent insurance act, the conduct regulated is nevertheless the underlying fraudulent conduct of the defendant. And, because it creates a new cause of action for civil penalties for such fraudulent conduct, thereby attaching new consequences to past events, application of the Sledge Jeansonne Act to.fraudulent conduct occurring prior to its effective date would violate the first prong of Planiol's retroactivity analysis. See Anderson, 798 So.2d at 98-99.
We note that this analysis may possibly differ where the State is seeking civil penalties due to a party’s violation of a settlement agreement entered into pursuant to the Sledge Jeansonne Act, as authorized by LSA-R.S. 22:1931.5(2), which seemingly regulates conduct other than the initial fraudulent insurance act. However, the facts alleged herein do not give rise to such a claim for penalties. Accordingly, we need not consider that question.